UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES FOREST SERVICE *et al.*,<br><br>*Defendants*,<br><br>and<br><br>SOUTH FORK COAL COMPANY, LLC,<br><br>*Intervenor-Defendant.* | Civil Action No. 24-87 (TJK) |

**MEMORANDUM OPINION & ORDER**

Plaintiffs, a collection of nonprofit and local community organizations, allege that the United States Forest Service violated federal law when it granted a permit to use two roads in West Virginia's Monongahela National Forest to South Fork Coal Company. The Forest Service moves to transfer the case to the Southern District of West Virginia under 28 U.S.C. § 1404(a). As explained below, after considering the relevant private and public interest factors, the Court will grant the motion and transfer the case.

**I.   Background**

    **A.   Factual Background**

The Cherry River watershed lies within and next to the Monongahela National Forest. ECF No. 1 ¶ 2. It is an area with exceptional ecological biodiversity and is home to many species listed as endangered or threatened under the Endangered Species Act ("ESA"), including the candy darter, Indiana bat, the northern long-eared bat. *Id.* ¶¶ 83, 84–112. The Cherry River's

headwaters begin as two separate rivers, flowing generally west-northwest across northern Greenbrier County before converging in Nicholas County at the city of Richwood: the entire watershed is within West Virginia. *Id.* ¶¶ 80–81.

South Fork Coal Company is a private mining company in West Virginia that operates Rocky Run Mine—a surface coal mine located on private lands next to the Monongahela National Forest. ECF No. 1 ¶¶ 1, 114. As a part of its operations, South Fork sought authorization from the West Virginia Department of Environmental Protection ("WVDEP") to use an 11.5-mile haulroad ("Haulroad No. 2"), which WVDEP granted. ECF No. 10-1 ¶ 2. South Fork also sought permits from the Forest Service to use Forest Roads 249[1] and 223. ECF No. 1 ¶¶ 113–16. In 2021, the Forest Service gave South Fork a road use permit for these roads, enabling it to haul coal, transport mining equipment and supplies, and conduct extensive road work and maintenance. *Id.* ¶¶ 113–18. Without the permit, South Fork would be unable to haul its coal and equipment to or from the Rocky Run Mine. *Id.* ¶ 119. According to Plaintiffs, South Fork's hauling activities have "harmful effects . . . on the environment and on endangered species and critical habitat." *Id.* ¶ 137.

B.  **Procedural History**

Plaintiffs filed suit in January 2024, alleging that in granting the permit, Federal Defendants violated the ESA, the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA").[2] ECF No. 1 ¶¶ 143–63. Plaintiffs seek declaratory relief, vacatur of the permit, and an order requiring Federal Defendants to comply with the ESA and NEPA.

---

[1] Forest Road 249 comprises the last 1.2 miles of Haulroad No. 2. ECF No. 10-1 ¶ 2.

[2] The Federal Defendants are the United States Forest Service, Randy Moore in his official capacity as Chief of the Forest Service, and Jason Hattersley in his official capacity as Gauley District Ranger of the Forest Service.

In February 2024, the Court granted South Fork's motion to intervene as a defendant. That same day, Plaintiffs filed a Notice of Related Case, suggesting that because of common issues of fact with *Center for Biological Diversity et al. v. Office of Surface Mining Reclamation & Enforcement*, No. 23-cv-3343 (APM) (November 8, 2023) (hereinafter *OSMRE*), the two cases should be decided by the same judge. ECF No. 18. Both Federal Defendants and South Fork objected to the Notice, arguing that the two cases are unrelated. ECF Nos. 23, 25. Five days after Plaintiffs filed the Notice, Federal Defendants moved to transfer this case to the Southern District of West Virginia.[3] ECF No. 20. South Fork does not oppose transfer there, ECF No. 20 at 2, but Plaintiffs do. ECF No. 29.

## II.     Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See* 28 U.S.C. § 1404(a). A court's analysis under § 1404(a) proceeds in two steps. "A court must first determine whether the transferee district is one where the action might have been brought, and then must balance the private and public interests involved in the proposed transfer to determine whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer." *City of W. Palm Beach v. U.S. Army Corps of Eng'rs*, 317 F. Supp. 3d 150, 153 (D.D.C. 2018) (cleaned up).

District courts have "broad discretion" in adjudicating motions to transfer*, McGovern v. Burrus*, 407 F. Supp. 2d 26, 27 (D.D.C. 2005), and must do so with an "individualized, case-by-

---

[3] Federal Defendants request, in the alternative, that the case be transferred to the Northern District of West Virginia. But all parties agree that between the two West Virginia federal districts, the Southern District is the more appropriate venue. *See* ECF No. 20-1 at 6 n.1; ECF No. 29 at 24.

3

case consideration," *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). Although the moving party bears the burden of establishing that transfer is proper, "courts in this circuit are instructed to guard against 'the danger that a plaintiff might manufacture venue in the District of Columbia . . . [b]y naming high government officials as defendants.'" *Ctr. for Biological Diversity v. Ross*, 310 F. Supp. 3d 119, 124 (D.D.C. 2018) (quoting *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993)).

### III.   Analysis

All parties agree that the threshold query—whether the case could have been brought in the proposed venue—is satisfied. ECF No. 29 at 24. Thus, the only question is whether Federal Defendants have met their burden of showing, after weighing the relevant private and public interests, that considerations of convenience and the interest of justice support a transfer. For the following reasons, the Court agrees that they have met their burden and that transfer to the Southern District of West Virginia is warranted.

#### A.   Private Interest Factors

Courts consider six private interest factors in a § 1404(a) analysis: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, particularly if important witnesses may be unavailable to testify live in one of the districts; and (6) the ease of access to sources of proof. *City of W. Palm Beach*, 317 F. Supp. 3d at 154 (citation omitted).

The Court considers the first three factors together because they are interrelated. Although a plaintiff's choice of forum is usually accorded "substantial deference," several factors may curtail that deference. To begin, "plaintiff's choice is entitled to substantially less deference when plaintiff chooses a forum that is not its home forum." *State v. U.S. Army Corps of Engineers*, 304 F. Supp. 3d 56, 63 (D.D.C. 2018) (internal quotations omitted); *see also City of W. Palm Beach*,

317 F. Supp. 3d at 154.  None of the six plaintiffs are headquartered in this district.  *See* ECF No. 1 ¶¶ 13–18.  They therefore "lack[] significant ties to the District of Columbia, and need not be afforded the substantial deference given to litigants in choosing their home forum." *Niagara Pres., Coal., Inc. v. Fed. Energy Regul. Comm'n*, 956 F. Supp. 2d 99, 104 (D.D.C. 2013).  Plaintiffs cite *Ross* to argue that because one of them "maintains an active office in D.C.," that should fully restore the Court's deference to their choice.  ECF No. 29 at 16 (citing *Ross*, 310 F. Supp. 3d at 125).  The Court disagrees.  Unlike *Ross*, where two of the plaintiffs had their homes in this district, here no plaintiff calls the District of Columbia "home." *See Ross*, 310 F. Supp. 3d at 125.  And although one plaintiff—like in *Ross*—has an "active office" here, that alone does not fully restore the usual deference to their choice.  All in all, Plaintiffs' lack of connection to this district materially erodes the usual deference that a court affords their choice of forum.

Plaintiffs' choice of forum is diminished further because "the majority of operative facts took place outside the District of Columbia." *Ross*, 310 F. Supp. 3d at 125 (citation omitted); *see also Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) ("[D]eference is mitigated if the plaintiffs' choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." (internal quotations omitted)).  In this case, the situation is even more stark: *all* the operative facts took place outside this district.  As Federal Defendants explain—and Plaintiffs do not dispute—"[a]ll work performed" on the permit occurred in West Virginia, and "all relevant decisionmakers report to offices in West Virginia." ECF No. 20-1 at 16; *see Ross*, 310 F. Supp. 3d at 125 ("In APA cases, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." (internal quotations omitted)).  The only connection Plaintiffs identify to the District of Columbia is that the Forest Service is headquartered here, as is the Forest Service Chief, Defendant Randy Moore.  But none of that

5

moves the needle in any meaningful way. It is "settled law that mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative; instead, there must be a real connection between the District of Columbia and this litigation that goes beyond the presence of federal agency officials who are generally regulating and overseeing the administrative process." *State*, 304 F. Supp. 3d at 64 (cleaned up); *see also City of W. Palm Beach*, 317 F. Supp. 3d at 155 ("[G]eneral descriptions of the involvement of individuals in the District of Columbia are insufficient to create a substantial factual nexus between this case and the District of Columbia."). There is no such real connection here.

Moreover, while a defendant's choice of forum is not usually afforded deference like a plaintiff's, courts find this factor relevant when the defendant's preferred forum is the same as where the claims arose. *See City of W. Palm Beach*, 317 F. Supp. 3d at 155 (finding that defendants "proffered legitimate reasons for preferring" their chosen forum because of its close nexus with the factual allegations); *see also Greater Yellowstone Coal*, 180 F. Supp. 2d at 129 (finding that defendants "have legitimate reasons for preferring the [transferee district]" because the permits at issue were located there). Thus, because the entire decisionmaking process giving rise to the claims unfolded in West Virginia, and Defendants seek transfer there, both the "defendant's choice of forum" and "where the claim arose" strongly support transfer.

Faced with an obvious lack of nexus between their claims and the District of Columbia, Plaintiffs argue that this case is related under Local Civil Rule 40.5(a)(3) to *OSMRE*—a case pending in this district before a different judge. They contend that the two cases are related because they "involve common issues of fact," and that therefore, transfer is improper. ECF No. 29 at 14. The Court is unconvinced. A party's burden to show relatedness under Rule 40.5(a) is a "heavy" one that is only satisfied "if the relationship between the . . . cases is certain." *Wilderness Soc'y v.*

6

*Bernhardt*, No. 20-cv-1176 (BAH), 2020 WL 2849635, at *2 (D.D.C. June 2, 2020) (internal quotations omitted). Because Rule 40.5(a) displaces "the strong presumption of random case assignment," it only applies "in narrow circumstances, such as when virtually identical and highly overlapping issues of fact are likely to be resolved in two cases." *Comm. on Judiciary v. McGahn*, 391 F. Supp. 3d 116, 121 (D.D.C. 2019). And cases are not related "if they 'involve common issues of law,' only 'common issues of fact.'" *G.Y.J.P. by & through M.R.P.S. v. Wolf*, No. 20-cv-01511 (TNM), 2020 WL 4192490, at *1 (D.D.C. July 21, 2020).

The primary overlap Plaintiffs identify is that the validity of the 2020 programmatic biological opinion for the Surface Mining Control and Reclamation Act Title V regulatory program (the "BiOp") may be implicated in both cases. *See* ECF No. 29 at 14–15; ECF No. 18. They point out that in its answer, South Fork invoked the BiOp, and actions taken under it, as a basis for upholding the agency actions at issue. But the "heavy" burden to show relatedness is not satisfied by pointing to one party's invocation of one possible defense to one of several claims against it that overlaps with an issue in another case. More importantly, as Plaintiffs recognize, the validity of the BiOp is a "legal question." ECF No. 29 at 15. But common issues of *law* do not establish relatedness, only common issues of *fact*. *Wolf*, 2020 WL 4192490, at *1 (declining to find factually dissimilar cases related even though they involved the same legal challenge, to the same defendants, and relied on the same arguments); *see also Dakota Rural Action v. U.S. Dep't of Agric.*, No. 18-cv-2852 (BAH), 2019 WL 1440134, at *2 (D.D.C. Apr. 1, 2019) ("At bottom, the plaintiffs may have shown that the two cases will pose similar questions dependent on a similar class of facts, but have failed to establish that the facts dictating the answers to those questions are common.").

Plaintiffs have not identified any overlapping *facts*, at least none significant enough to

7

support relatedness under the rule. This case and *OSMRE* implicate different federal agencies, agency decisions, and administrative records. Moreover, while both cases involve environmental impacts to endangered species, this case is only about the effects of South Fork's hauling activities on Forest Roads 249 and 223, while *OSMRE* implicates hundreds of mining facility permits across several states. *See OSMRE*, No. 23-cv-3343, ECF No. 13 ¶ 5 (Mar. 4, 2024). And although both cases involve harm to a common endangered species—the candy darter—that does not show that they involve "highly overlapping issues of fact." *McGahn*, 391 F. Supp. 3d at 121. Aside from the candy darter, which is referenced in both cases, this case centers on environmental effects on the northern long-eared bat and Indiana bat, ECF No. 1 ¶¶ 96–112, while *OSMRE* focuses on the Guyandotte River crayfish and Big Sandy crayfish, *OSMRE*, No. 23-cv-3343, ECF No. 13 ¶¶ 69–77. Finally, that Plaintiffs did not identify *OSMRE* as a related case at the time of filing their complaint underscores the lack of material factual overlap between them. In short, the Court does not find that this case relates to *OSMRE* under Local Civil Rule 40.5(a)(3). Thus, Plaintiffs' attempt to establish a nexus to this venue through *OSMRE* fails.

The last three "convenience" factors—convenience of the parties, witnesses, and access to sources of proof—are neutral. "In an APA case, neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the analysis." *Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) (internal quotations omitted); *see also Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. 19-cv-3144 (BAH), 2019 WL 6035356, at *6 (D.D.C. Nov. 14, 2019) (holding the same for claims arising under the APA and NEPA). Because this case "involves judicial review of an administrative decision . . . neither discovery, witnesses, nor a trial will be required." *State*, 304 F. Supp. 3d at 66.

In sum, even though one plaintiff maintains an "office" in this district, because none of

them are headquartered here, and because this controversy arose in West Virginia—which is also Defendants' preferred forum—the Court finds that the private interest factors weigh modestly in favor of transfer.[4]

### B.    Public Interest Factors

As for the public interest factors, the Court must consider: (1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *City of W. Palm Beach*, 317 F. Supp. 3d at 156 (citation omitted).

Both parties agree—whether this case and *OSMRE* are related aside—that the first factor is neutral. *See* ECF No. 20-1 at 20; ECF No. 29 at 20; *see also Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 78 (D.D.C. 2013) ("It is of course well settled that no federal court is more competent than any other to resolve questions of federal law, which are the only legal questions at issue here." (citations omitted)).

As for relative congestion, the median time for a case to be resolved before pretrial in this district is 6.3 months, compared to 12.3 months in the Southern District of West Virginia. Some courts have found this difference to be insignificant, *see Neighbors Against Bison*, 2019 WL 6035356, at *7 (comparing 5.8 months to 10.1 months), while others have observed that it "slightly" weighs against transfer, *see Conserve Sw. Utah v. U.S. Dep't of the Interior*, No. 21-cv-1506 (ABJ), 2022 WL 20700168, at *7 (D.D.C. Sept. 7, 2022) (comparing 5.7 months to 12.2 months). In any event, even if the difference in resolution time slightly weighs against transfer

---

[4] The Court notes that even if the private factors were considered in equipoise, one of the public interest factors discussed below—the local interest in deciding this controversy in West Virginia—still unquestionably tips the overall balance in favor of transfer.

here, "this one factor, on its own, does not outweigh all of the others." *W. Watersheds Project v. Jewell*, 69 F. Supp. 3d 41, 44 (D.D.C. 2014).

The final factor—the local interest in deciding local controversies at home—is "perhaps [the] most important factor." *Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54 (D.D.C. 2012); *see also State*, 304 F. Supp. 3d at 67 ("[T]he interest in having local controversies decided at home is preeminent." (internal quotations omitted)).  And local interest is at its zenith when the challenged action, the decisionmaking process that led to it, and its impact, all occur locally.  *See State*, 304 F. Supp. 3d at 67.  Such is the case here.  The permit at issue relates to activities in West Virginia, the agency decisions were made in West Virginia, the forest, watershed, and species affected are all in West Virginia, and any economic impact that might result if South Fork is forced to cease operating will fall on West Virginians.  *See* ECF No. 20-1 at 22–23.  On top of all that, the permitting at issue requires close cooperation between the Forest Service and WVDEP, because both have authority over the forest roads in that area.  *Id.*  Under these circumstances, courts in this district "commonly find that compelling local interest support[s] transfer." *Ute Indian Tribe of Uintah & Ouray Rsrv. v. U.S. Dep't of Interior*, 560 F. Supp. 3d 247, 266–67 (D.D.C. 2021) (collecting cases).  That is so here.  The Court agrees that "this case should be litigated within the view and reach of the people who will be most vitally affected by its outcome." *Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, No. 21-cv-3276 (CRC), 2022 WL 3906934, at *5 (D.D.C. June 27, 2022) (citation omitted).

In response, Plaintiffs argue that this is not a local controversy because it "concerns a federal agency's failure to comply with federal law" and because the consequences of that failure "are national in scope." ECF No. 29 at 21.  But if that were so, every challenge to agency action involving ESA or NEPA would fit the bill.  Just because a case "involves federal laws and could

result in a decision with 'national implications,' these implications do not outweigh the significant interest of [local] residents." *City of W. Palm Beach*, 317 F. Supp. 3d at 156; *see also Ute Indian Tribe of Uintah & Ouray Rsrv.*, 560 F. Supp. 3d at 266. Rather, when all the relevant actions and effects occur within one state, as here, the issue is a local one. *Cf. Ross*, 310 F. Supp. 3d at 127 (finding that national interests were implicated because the case "present[s] a very different scenario from one in which all of the relevant events and actions occurred in the transferee district." (emphasis in original)). Thus, the public interest factors, considered together, decisively favor transfer.

\*   \*   \*

For the above reasons, the Court finds that both the private and public interest factors favor transfer of this case to the Southern District of West Virginia, and so transfer is warranted under 28 U.S.C. § 1404(a).

### IV. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Federal Defendants' Motion to Transfer Venue, ECF No. 20, is **GRANTED**. It is further **ORDERED** that this case shall be **TRANSFERRED** to the United States District Court of the Southern District of West Virginia pursuant to 28 U.S.C. § 1404(a). It is further **ORDERED** that Federal Defendants shall answer or otherwise respond to Plaintiffs' Complaint within 15 days of this case being docketed in the transferee district.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 21, 2024

11