UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

CENTER FOR BIOLOGICAL DIVERSITY and
APPALACHIAN VOICES and
GREENBRIER RIVER WATERSHED ASSOCIATION and
KANAWHA FOREST COALITION and
SIERRA CLUB and
WEST VIRGINIA HIGHLANDS CONSERVANCY,

      Plaintiffs,

v.                                          CIVIL ACTION NO.  5:24-cv-00274

UNITED STATES FOREST SERVICE and
RANDY MOORE *in his official capacity as
Chief of the Forest Service* and
JASON HATTERSLEY *in his official capacity
as Gauley District Ranger of the Forest Service,*

      Defendants.

v.

SOUTH FORK COAL COMPANY, LLC,

      Intervenor Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Intervenor Defendant South Fork Coal Company, LLC's ("South Fork") Motion to Dismiss [ECF 42], filed August 2, 2024. Plaintiffs Center for Biological Diversity, Appalachian Voices, Greenbrier River Watershed Association, Kanawha Forest Coalition, Sierra Club, and West Virginia Highlands Conservancy (collectively "Plaintiffs") responded in opposition [ECF 46] on August 16, 2024, to which Intervenor Defendant replied [ECF 47] on August 23, 2024.

I.

Plaintiffs are nonprofit organizations dedicated to preserving ecological integrity in their respective regions. [ECF 1 at ¶ 13–18]. Plaintiffs' members have "recreated in, visited, studied, and worked to protect the Cherry River watershed and surrounding environment." [*Id.* at ¶ 20]. South Fork operates the Rocky Run Surface Mine adjacent to the Monongahela National Forest. [*Id.* at ¶ 114].

Forest Service Road No. 249 ("FS 249") is a "gravel road on the Monongahela [National Forest] that is upslope and runs along South Fork Cherry River, . . . which flows south-westerly between FS 249 and Rocky Run Mine." [*Id.* at ¶ 3, 115]. Forest Service Road No. 223 ("FS 223") is a "gravel road that runs along a tributary to North Fork Cherry River, . . . [which] runs north from Rocky Run Mine through the Monongahela [National Forest]." [*Id.* at ¶ 3, 116]. South Fork requires FS 249 and FS 223 to operate Rocky Run Surface Mine. [*Id.* at ¶ 119]. In July 2021, it applied to the United States Forest Service ("Forest Service")[1] for a commercial road use permit to utilize FS 249 and FS 223. [*Id.* at ¶ 113].

On September 29, 2021, the Forest Service approved the requested permit. [*Id.* at ¶ 120]. South Fork was authorized therein, respectively, to use (1) FS 249 to transport oversized coal loads to a coal preparation plant in Clearco, and (2) FS 223 to transport equipment and supplies back to Rocky Run Mine. [*Id.* at ¶ 117, 119]. Considerable grading, clearing, and culvert installation by South Fork upgraded FS 249 and FS 223 for authorized uses. [*Id.* at ¶ 118].

A series of sedimentation issues developed on FS 249 and FS 223 shortly after permit issuance. [*Id.* at ¶ 129–36]. On March 3, 2022, the West Virginia Department of

---

[1] References to the Forest Service also include its Chief, Randy Moore, and Jason Hattersley, the Gauley District Forest Service Ranger.

Environmental Protection ("WV DEP") cited South Fork for failing to properly maintain FS 249. [*Id.* at ¶ 130]. On March 9, 2022, South Fork was ordered to cease hauling. [*Id.* at ¶ 131]. WV DEP noted "site conditions [were] worsening" and "potential off-site impacts" followed each rain. [*Id.*]. On March 16, 2022, the Forest Service cited South Fork for violating its FS 249 permit. [*Id.* at ¶ 132]. South Fork was also ordered to repair crushed culverts on FS 223. [*Id.* at ¶ 133]. On May 2, 2022, the Forest Service confirmed permit violations, including "sedimentation escaping . . . control devices." [*Id.* at ¶ 135]. WV DEP discovered other violations in late October and early November 2023. [*Id.* at ¶ 136].

        The Cherry River watershed -- within which FS 249 and 223 lie -- consists of lush forests and vast, free-flowing rivers, including the North Fork Cherry River and South Fork Cherry River. [*Id.* at ¶ 2]. The areas form an ideal habitat for endangered species, such as the candy darter, northern long-eared bat, and Indiana bat. [*Id.*]. Plaintiffs allege the subject permit has harmed the areas and thus the species due to increased disruption and sedimentation of nearby streams and forestry. [*Id.* at ¶ 90–93, 103–04, 106–10].

        Tierra Curry is a senior scientist member at the Center for Biological Diversity. [*Id.* at ¶ 22]. She "enjoys wading and swimming in rivers and creeks in West Virginia and . . . [searching] for fish, salamanders, and mussels." [*Id.*]. Ms. Curry visited the North and South Fork Cherry Rivers in the summers of 2021 and 2022 "to enjoy the scenery and to look for wildlife." [*Id.*]. She plans to return in the summer of 2024. [*Id.*]. She alleges her enjoyment of the Rivers has "diminished" due to "sediment which smothers the habitats of the animals she loves, including the candy darter." [*Id.*].

        Willie Dodson is a member of Appalachian Voices who visits the South Fork Cherry River. He observes the candy darter and any pollutants perhaps affecting them. [*Id.* at ¶

23]. He plans to continue these activities in the future months. [*Id.*]. He alleges his interests are threatened by sedimentation and pollution from South Fork's permit activities. [*Id.*].

Doug Wood is a member at the (1) Center for Biological Diversity, (2) West Virginia Highlands Conservancy, and (3) Kanawha Forest Coalition. [*Id.* at ¶ 24]. He is keenly interested in the northern long-eared bat and the Indiana bat. [*Id.*]. Mr. Wood "has participated in numerous mist net surveys for these bats . . . to protect . . . maternity colonies in the summer from harmful effects of mining, roads, logging, and other activities that can disturb and cause harm to bats." [*Id.*]. He worries damage to the "roosting and foraging" areas in the "forests and stream corridors of the Cherry River watershed" will harm and eradicate the bats [*Id.*]. He plans to return to the North and South Fork Cherry Rivers in the summer of 2024 to look for bats and fish. [*Id.*].

On January 10, 2024, Plaintiffs instituted this action. They allege the Forest Service permit violated the Endangered Species Act ("ESA"), National Environmental Policy Act ("NEPA"), and Administrative Procedure Act ("APA"). [*Id.* at ¶ 1]. The litany of alleged agency miscues include (1) failing to consult with the United States Fish and Wildlife Service to avoid jeopardizing endangered species or their habitats under section 7(a)(2) of the ESA, (2) irretrievably committing resources without prior consultation as required under ESA section 7(d), and (3) failing under NEPA to analyze the direct, indirect, and cumulative environmental effects prior to permit issuance. [*Id.* at ¶ 143–63]. Plaintiffs also allege the ESA and NEPA noncompliance constitutes agency action that was, *inter alia*, unlawfully withheld or unreasonably delayed or otherwise unlawful, in violation of the APA. [*Id.* at ¶ 7]. Plaintiffs seek declaratory and injunctive relief, along with attorney fees and costs.

On August 2, 2024, South Fork moved to dismiss. [ECF 42]. It asserts Plaintiffs have not alleged an actual, concrete injury fairly traceable to the permit. [ECF 43 at 1–2]. South

4

Fork contends there are no allegations respecting where Plaintiff organizations visited nor how permitted activities gave rise to the alleged injury. [*Id.* at 14]. South Fork further asserts (1) the members' plans to return are too vague for injury purposes, and (2) "recognizing third-party standing for an association based on alleged harm to a non-party individual member violates Article III of the U.S. Constitution." [*Id.* at 19].

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(1) correspondingly permits a defendant to challenge a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading

need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

A motion to dismiss under Rule 12(b)(1) challenges subject matter jurisdiction. This includes Article III standing challenges. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). "A defendant may challenge [standing at the motion-to-dismiss stage] in one of two ways: facially or factually." *Id.* (quoting *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). A facial challenge such as this one asserts "the complaint 'fails to allege facts upon which [standing] can be based . . . .'" *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). And the plaintiff is, consequently, "'afforded the same procedural protection' that exists on a motion to dismiss." *Id.* (quoting *Adams*, 697 F.2d at 1219). Stated another way, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

### III.

As noted, South Fork challenges satisfaction of the injury-in-fact requirement. It notes named members have not "visited the RUP permit area or the adjacent stream tributaries," and that the named members' plans to return are merely a "vague desire to return" and do not rise to the level of an actual or imminent injury. [ECF 43 at 12–17].

6

## A. Article III Standing

"[E]nvironmental litigation . . . standing requirements are not onerous." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003). Organizations may have standing to sue either when the organization itself is injured or on behalf of its injured members. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396–97 (4th Cir. 2011); *see also Warth v. Seldin*, 422 U.S 490, 511 (1975). An organization, acting on behalf of its members, establishes organizational standing when: "a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *see also NRDC v. Watkins*, 954 F.2d 974, 978 (4th Cir. 1992). South Fork's motion to dismiss challenges the first element. [ECF 43 at 8].

To establish Article III standing in his or her own right, a plaintiff must establish three elements: (1) an injury in fact "that is both 'concrete and particularized' and actual or imminent, not conjectural or hypothetical;" (2) a sufficient causal connection between the injury suffered and conduct complained of; and (3) a likelihood "'that the injury will be redressed by a favorable decision.'" *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023). "An injury is particularized if it affects the plaintiff in a personal and individual way." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (internal citations and quotations omitted). "[A]n injury is concrete if it is 'de facto'—that is, if it actually exists." *Id.*

## B. Injury in Fact

Although critical for subject matter jurisdiction, the injury-in-fact bar is set quite low for environmental matters:

> A plaintiff can show an "injury in fact" when he or she suffers "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Gaston Copper,* 204 F.3d at 154; *see also Defenders of Wildlife,* 504 U.S. at 560, 112 S. Ct. 2130. In an environmental case, the question is whether the plaintiff has suffered an injury, as opposed to whether the environment has actually been harmed. *See Laidlaw,* 528 U.S. at 181, 120 S. Ct. 693. Specifically, a plaintiff need only show that he used the affected area, and that he is an individual "for whom the aesthetic and recreational values of the area [are] lessened" by the defendant's activity. *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972); *see also Laidlaw,* 528 U.S. at 184, 120 S. Ct. 693 (holding that plaintiffs had established an injury in fact because the challenged activity directly affected their "recreational, aesthetic, and economic interests"); *Defenders of Wildlife,* 504 U.S. at 562–63, 112 S. Ct. 2130 ("[T]he desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for the purpose of standing."); *Gaston Copper,* 204 F.3d at 159 (concluding that individuals' allegations that they would make greater recreational use of waterway except for concern over defendant's discharges sufficient for injury in fact).

*Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 268 F.3d 255, 263 (4th Cir. 2001).

### 1. Plaintiffs Center for Biological Diversity, Appalachian Voices, West Virginia Highlands Conservancy, and Kanawha Forest Coalition

South Fork contends Plaintiffs Center for Biological Diversity, Appalachian Voices, West Virginia Highlands Conservancy, and Kanawha Forest Coalition have not established an injury-in-fact through their named members inasmuch as those individuals have not visited the "affected area." But South Fork takes an inexplicably crabbed view of the "affected area," confining it to the permitted road segments and not the surrounding geographical area. [ECF 43 at 2 ("The road segments authorized for use under the RUP are collectively referred to below

as the 'RUP Area.'")]. That approach is insupportable in view of controlling precedent and the operative pleading.

In *Gaston Copper Recycling*, our Court of Appeals concluded that waters flowing 16.5 miles from the defendant facility's discharge point was an "'area affected by the challenged activity' rather than 'an area roughly in the vicinity of it.'" *Gaston Copper Recycling*, 629 F.3d at 397 (quoting *Lujan*, 504 U.S. at 565–566). Plaintiffs asserted a sufficient injury in fact as evidenced by its member's "use of the waters in that area, and his reasonable concern that runoff from [the] facility is polluting the waters in that area." *Id.*

Center for Biological Diversity member Tierra Curry, Appalachian Voices member Willie Dodson, and Center for Biological Diversity, West Virginia Highlands Conservancy, and Kanawha Forest Coalition member Doug Wood all establish injuries in fact consistent with *Gaston Copper Recycling*. Both FS 249 and FS 223 are adjacent to the "North and South Fork Cherry Rivers . . . , and the surrounding forests are home to endangered northern long-eared bats and Indiana bats." [ECF 46 at 10]. It is quite reasonable to conclude that the extensive construction required to execute the permit caused pollution and disruption to the surrounding streams and forestry. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 163 (4th Cir. 2000) (plaintiffs "may rely on circumstantial evidence such as proximity to polluting sources, predictions of discharge influence, and past pollution to prove both injury in fact and traceability.").

Further, Ms. Curry visited the North and South Fork Cherry Rivers in the summers of 2021 and 2022 to observe the candy darter and other wildlife. [ECF 46 at 8]. She "enjoys wading and swimming in rivers and creeks in West Virginia and walking on the banks to look for fish, salamanders, and mussels." [ECF 1 at ¶ 22]. Now, "her enjoyment of these waterways is

9

diminished by pollution from sediment caused by the authorized [permit] and its impacts on candy darters." [ECF 46 at 8–9]. Similarly, Mr. Dodson has traveled to South Fork Cherry River to observe candy darters and conduct stream water monitoring for pollutants. [ECF 1 at ¶ 23]. Yet, these interests are "threatened by sedimentation and pollution from the activities the Forest Service authorized under the Permit." [*Id.*]. Lastly, Mr. Wood has participated in mist net surveys for both northern long-eared bats and Indiana bats in West Virginia "to protect bat maternity colonies in the summer from harmful effects of mining, roads, logging, and other activities that can disturb and cause harm to bats." [*Id.* at ¶ 24]. He worries the bats' "roosting and foraging habitat in the forests and stream corridors of the Cherry River watershed could harm the bats and cause them to disappear from the area forever." [*Id.*]. The named members have visited the "affected area."

Based upon the foregoing, Plaintiffs Center for Biological Diversity, Appalachian Voices, West Virginia Highlands Conservancy, and Kanawha Forest Coalition have suffered an injury-in-fact inasmuch as their members (1) used the "affected area," and (2) their aesthetic or recreational values are lessened by the authorization of South Fork's permit.

South Fork further contends the members' plans to return merely constitute "some-day intentions" and do not rise to the level of an actual or imminent injury. [ECF 43 at 13 (quoting *Lujan*, 504 U.S. at 564)]. In *Lujan*, plaintiffs' members intended to return to the affected area but did not have specific visits scheduled. *Lujan*, 504 U.S. at 564. The Supreme Court concluded that general plans to return, without further temporal details, are insufficient to establish an actual or imminent injury. *Id.* The High Court further noted the concept of imminence is "concededly a somewhat elastic concept," but is absent when a plaintiff "alleges only an injury at some indefinite future time." *Id.* at 606 n.2. The allegations respecting Plaintiffs' members are, however,

10

sufficiently concrete and definite. Moreover, only "general factual allegations" are required in this setting at the pleading stage. *Id.* at 561.

Further elaborating on the concept, our Court of Appeals has noted "a plaintiff who experienced a past injury from a visit to a physical location need only show a *plausible intent* to return to that location." *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (emphasis added) (citing *Nanni v. Aberdeen Marketplace*, 878 F.3d 447, 455 (4th Cir. 2017)). A plausible intent to return hinges upon a totality of the circumstances. *Id.* at 656 (citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013)).

The level of detail demanded by South Fork is inconsistent with the inquiry's temporal play in the joints. *See Lujan*, 504 U.S. at 606 n.2 ("Our insistence upon these established requirements of standing does not mean that we would . . . 'demand . . . detailed descriptions' of damages."). As noted, Plaintiffs allege both Ms. Curry and Mr. Wood planned to return to the North and South Fork Cherry Rivers in the summer of 2024, and Mr. Dodson planned to return to the South Fork Cherry River in the then-coming months and on an ongoing basis. [ECF 1 at ¶ 22–24]. These professed intentions suffice. Moreover, the members' plans to return are plausible, as evidenced by their repetitive visits to the North and South Fork Cherry Rivers. There exists an actual or imminent injury.

2. **Plaintiffs Sierra Club and the Greenbrier River Watershed Association**

Additionally, South Fork contends Plaintiffs Sierra Club and the Greenbrier River Watershed Association ("Greenbrier") lack standing inasmuch as they failed to identify any member injured by the affected activity. Plaintiffs allege these organizations have members in West Virginia, yet they do not identify any member harmed by the authorization of South Fork's permit. Normally, organizations suing in a representative capacity are required to "make specific

11

allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). However, "[i]n cases where each plaintiff seeks *identical* relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Elrod v. WakeMed*, No. 21-2203, 2023 WL 1256601, at *3 (4th Cir. Jan. 31, 2023) (quoting *Rumsfeld v. F. for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)); *see Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 217 (4th Cir. 2017) (noting various decisions where the Court declined to assess the standing of each plaintiff in multiple-plaintiff cases where identical relief was requested).

Like the other institutional Plaintiffs, Sierra Club and Greenbrier are nonprofit organizations with members in West Virginia who have "recreated in, visited, studied, and worked to protect the Cherry River watershed and surrounding environment, which is significantly impacted by the Forest Service's authorization of the Permit." [ECF 1 at ¶ 20]. Moreover, the Plaintiffs all seek the same declaratory and injunctive relief from the same defendants. South Fork cites the aforementioned decision in *Elrod* in its reply brief, but it inexplicably ignores that standing there was absent inasmuch as the plaintiff did not seek relief identical to its co-plaintiffs. *See Elrod*, 2023 WL 1256601, at *3 (noting that Elrod and Bertolo alleged their insurers sent their medpay benefits to WakeMed, yet evidence showed Palmer's insurer paid his medpay benefits to another healthcare provider).

Based upon the foregoing discussion, Sierra Club and Greenbrier may pursue their claims given the identical relief requested by all Plaintiffs.

**C. Causation**

The causation element in an environmental case requires only that a plaintiff show "a defendant discharges a pollutant that causes or contributes to the kind of injuries alleged in the specific geographic area of concern." *Gaston Copper Recycling*, 204 F.3d at 161 (citation omitted).

Plaintiffs allege multiple means that South Fork's permit activities contribute to the kinds of injuries alleged in the North and South Fork Cherry Rivers and the surrounding forestry. [ECF 1 at ¶ 123–28]. For example, Plaintiffs detail how daily, oversized vehicle coal hauling, road maintenance, and open-top coal hauling likely results in "pollution, runoff, and sedimentation" threatening surrounding aquatic life; they also identify how road work and increased noise likely disrupts bat roosting and foraging. [*Id.*]. In addition, Plaintiffs point to a myriad of violation notices South Fork received from the WV DEP and Forest Service for its failure to properly maintain the permit roads, resulting in sedimentation. [*Id.* at ¶ 129–39]. Causation is properly alleged.

### D. Redressability

"An injury is redressable if it is 'likely, as opposed to merely speculative, the injury will be redressed by a favorable decision.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). An actual or threatened injury by illegal conduct is redressed by "a sanction that effectively abates that conduct and prevents its recurrence . . . ." *Laidlaw*, 528 U.S. at 185–86.

The requested declaratory and injunctive relief will redress injuries caused by the alleged violations of the ESA, NEPA, and APA. For example, sedimentation and stream damage, as well as harms to bat roosting and foraging, would be expected to subside following an order vacating the road permit. "Without the Permit, [South Fork] would not be able to haul coal from Rocky Run Mine to the coal preparation plant in Clearco, West Virginia, and would not be able to

haul coal mining supplies and equipment to the mine," thus preventing the injury and cause alleged by Plaintiffs. [ECF 1 at ¶ 119]. Therefore, redressability is satisfied.

### IV.

Based upon the foregoing discussion, South Fork's Motion to Dismiss [**ECF 42**] is **DENIED**.[2]

The Clerk is directed to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: January 22, 2025

Frank W. Volk
Chief United States District Judge

---

[2] South Fork's general challenge to "third-party" standing -- more appropriately identified as "representational" or "organizational" standing -- is summarily rejected as inconsistent with binding precedent. *Laidlaw*, 528 U.S. at 180–81; *see also Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 283 (4th Cir. 2018).