UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, *et al.*<br><br>*Defendants*,<br><br>v.<br><br>SOUTH FORK COAL COMPANY, LLC,<br><br>*Defendant-Intervenor*. | Civil Action No. 5:24-cv-00274<br>(Chief Judge Volk)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT-INTERVENOR'S MOTION TO EXCLUDE PLAINTIFFS' AFFIDAVITS OR IN THE ALTERNATIVE TO ALLOW DISCOVERY ON STANDING** |

## INTRODUCTION

Without first conferring with Plaintiffs' counsel, Defendant-Intervenor South Fork Coal Company, LLC ("South Fork"), has moved to exclude Plaintiffs' affidavits from the Court's consideration in ruling on Plaintiffs' motion for summary judgment and, in the alternative, to allow "limited discovery" with respect to Plaintiffs' standing. In essence, South Fork seeks to exclude evidence offered to establish Plaintiffs' standing, a jurisdictional requirement, or, alternatively, to take depositions of Plaintiffs' members.

In seeking to exclude Plaintiffs' sworn declarations—submitted to support Plaintiffs' burden of establishing the core elements required for Article III standing—South Fork asks this Court to disregard competent, relevant, and admissible evidence at the very stage of litigation where such a showing is both necessary and appropriate. Plaintiffs' declarations provide direct, personal testimony of the injuries resulting from Federal Defendants' conduct—specifically, the

U.S. Forest Service's issuance of the Road Use Permit ("RUP") to South Fork without complying with the procedures required by the Endangered Species Act ("ESA"), National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA")—and are, thus, properly considered by the Court in assessing jurisdiction over this matter. Excluding Plaintiffs' declarations from consideration would undermine the Court's standing inquiry at summary judgment and run contrary to well-established precedent allowing such declarations to support Article III standing at this stage.

      Not only must the Court assess jurisdiction at every stage of litigation, including summary judgment, but South Fork has also put Plaintiffs' standing directly at issue, questioning the factual basis of Plaintiffs' injuries. At the same time, South Fork attempts to exclude the evidence Plaintiffs present to support their injuries giving rise to Article III standing. South Fork cannot have it both ways. Plaintiffs' declarations provide the necessary context to refute any dispute of material fact relevant to Plaintiffs' standing at summary judgment. Plaintiffs' sworn declarations meet the evidentiary requirements for admissibility, as they are made on personal knowledge, set out relevant and admissible facts, and show that Plaintiffs' members are competent to testify. Relevant parts of Plaintiffs' declarations are neither hearsay nor expert witness testimony, as South Fork asserts in a conclusory manner, but instead present Plaintiffs' members' firsthand knowledge of the Forest Service's issuance of the RUP without complying with the procedures required by the ESA, NEPA, and the APA and the resulting concrete injuries they have and will continue to suffer as a result.

      South Fork's request in the alternative for discovery on Plaintiffs' standing should be dismissed outright because counsel did not follow L. Cv. R. 37.1(b) and confer prior to filing. Furthermore, because South Fork has failed to provide any evidence that Plaintiffs' declarations are not credible, such discovery is unnecessary. Instead, South Fork's untimely, 11th-hour request

1

seeks only to further delay this Court's ruling on the merits. South Fork had ample opportunity to request discovery earlier in this proceeding, and excuses for failing to do so are unavailing.

Accordingly, Plaintiffs oppose South Fork's motion to exclude and, in the alternative, to conduct "limited discovery" with respect to Plaintiffs' standing.

## PROCEDURAL BACKGROUND

Plaintiffs' Complaint asserts three claims for relief. First, Plaintiffs allege that Defendant U.S. Forest Service violated section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), regulations at 50 C.F.R. § 402.14, and the APA, 5 U.S.C. § 706(1), (2)(A), (2)(D), by issuing the Road Use Permit ("RUP") without initiating and completing consultation with the U.S. Fish and Wildlife Service ("FWS"). [ECF 1 at ¶¶ 143–150]. Second, Plaintiffs allege that the Forest Service violated ESA section 7(d), 16 U.S.C. § 1536(d), and regulations at 50 C.F.R. § 402.09, by irretrievably committing federal resources in a manner that foreclosed the development of "reasonable and prudent" alternatives or measures to protect listed species and critical habitat, also in violation of the ESA and APA, 5 U.S.C. § 706. [*Id.* at ¶¶ 151–156]. Third, Plaintiffs allege that the Forest Service failed to comply with NEPA's procedural requirements, 42 U.S.C. § 4332, constituting agency action unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1); without observance of procedure required by law, *id.* § 706(2)(D); and, alternatively, arbitrary and capricious, *id.* § 706(2)(A). [*Id.* at ¶¶ 157–163]. Plaintiffs seek declaratory and injunctive relief, including vacatur of the RUP, an order requiring the Forest Service to complete ESA consultation and NEPA review, and an injunction prohibiting the Forest Service from authorizing the use of Monongahela National Forest roads for commercial hauling of coal and mining supplies until it fully complies with the ESA, NEPA, and APA. [*Id.* at 38].

On August 2, 2024, South Fork moved to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1), [ECF 42], on the assertion that Plaintiffs lacked standing because the Complaint did

not allege actual, concrete injuries fairly traceable to the challenged RUP, [ECF 43 at 1–2]. South Fork further asserted that Plaintiffs' Complaint provided no allegations respecting where Plaintiffs visited nor how permitted activities gave rise to the injuries. [*Id.* at 12–17].

South Fork's Motion to Dismiss was still pending on November 26, 2024, when Plaintiffs filed their motion for summary judgment and memorandum, [ECF 59, 60], together with the sworn declarations from Plaintiffs' members in support of their standing [ECF 59-1–59-10]. The Court denied South Fork's motion to dismiss on January 22, 2025, [ECF 63], on the basis that "[t]here exists an actual or imminent injury," [*id.* at 11], that "[c]ausation is properly alleged," [*id.* at 13], and that "redressability is satisfied," [*id.* at 14]. Now, South Fork attempts to exclude from the Court's review Plaintiffs' declarations supplied to support their standing in this case.[1] [ECF 79]. For the reasons set forth fully herein, South Fork's motion should be denied.

## ARGUMENT

**I.      The Court May Consider Extra-Record Evidence in Support of Article III Standing.**

Plaintiffs submitted declarations in this case to establish standing—a threshold jurisdictional issue that lies outside the scope of the APA's record rule. It is well-established that the Court may consider evidence outside the record to evaluate jurisdictional issues such as standing. *See Doriety v. Sletten*, 109 F.4th 670, 674 (4th Cir. 2024) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (explaining that "when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.")). The Supreme Court has long recognized that standing may be, and often must be, demonstrated by evidence outside the administrative record, including affidavits and declarations. *See Lujan v.*

---

[1] Federal Defendants have not similarly challenged Plaintiffs' standing declarations. Federal Defendants have separately filed a motion to strike certain attachments to Plaintiffs' declarations [ECF 80], to which Plaintiffs will separately respond.

3

*Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining that at summary judgment, standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation"); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–54 (2010) (relying on declarations to find that plaintiffs had Article III standing).

To prove their standing, Plaintiffs must demonstrate: (1) an injury in fact "that is both 'concrete and particularized' and actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury suffered and conduct complained of; and (3) a likelihood "'that the injury will be redressed by a favorable decision.'" *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting *Lujan*, 504 U.S. at 560–61). Plaintiffs—organizations acting on behalf of members—establish standing when: (a) their members would "otherwise have standing to sue in [their] own right"; (b) the interests they seek to protect are "germane" to the organizational purposes; and (c) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). And "the Supreme Court has made it clear that the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (internal quotation marks omitted).

The Fourth Circuit follows the Supreme Court's instructions in *Lujan* by routinely accepting declarations to establish standing, *see, e.g.*, *Sierra Club v. Dep't of Interior*, 899 F.3d 260, 283–85 (4th Cir. 2018) (relying on declarations to find that plaintiffs had Article III standing), and it is sufficient for any one of Plaintiffs' members to show that they used the affected area and that they are an individual "for whom the aesthetic and recreational values of the area [are] lessened" by the defendant's activity. *Piney Run Pres. Ass'n v. Cnty. Comm'rs*, 268 F.3d 255, 263 (4th Cir. 2001) (citations omitted). "[A]t summary judgment, a plaintiff must

demonstrate standing with evidence, not mere allegations or 'unsupported speculation.'" *Fernandez v. RentGrow, Inc.*, 116 F. 4th 288, 300 (4th Cir. 2024).

To determine Plaintiffs' standing at the summary judgment stage of litigation, the Court's inquiry is, accordingly, not confined to the administrative record. *See also Amica Ctr. for Immigrant Rights v. DOJ*, No. 25-298, 2025 WL 1852762, at *31 (D.D.C. July 6, 2025) ("[T]he Court is not limited to the administrative record in determining whether it has subject matter jurisdiction over Plaintiffs' claims.") (citing *Lujan*, 504 U.S. at 561).

1. **Plaintiffs Properly Cited to Particular Parts of Plaintiffs' Declarations.**

South Fork wrongly claims that Plaintiffs' did not cite to "particular parts of materials in the record." [ECF 79 at 7]. Plaintiffs did. Specifically, in addressing standing, Plaintiffs' cite to the declarations that demonstrate Plaintiffs' members' professional, scientific, aesthetic, recreational, and other interests harmed by the Forest Service's failure to comply with the ESA and NEPA when it issued the RUP, [ECF 60 at 19], including members Tierra Curry [ECF 59-2], Jay Doran Callahan [ECF 59-3], Willie Dodson [ECF 59-4], James B. Kotcon [ECF 59-5], James R. Webb [ECF 59-6], Douglas M. Wood [ECF 59-7], and Andrew W. Young [ECF 59-8].

Plaintiffs then point to specific paragraphs in two declarations: the Curry declaration, [ECF 60 at 19] citing Curry Decl. [ECF 59-2 at ¶¶ 4, 15–17, 18, 20]; and the Young declaration, [ECF 60 at 19] citing Young Decl. [ECF 59-8 at ¶¶ 6, 12–21, 26, 28, 29, 44, 65]. Ms. Curry, who "has visited the area impacted by the RUP while looking for Darters on numerous occasions" and enjoys "walk[ing] along or in the river[s] to observe wildlife," believes the area to be "one of the most beautiful areas [she has] ever explored." [ECF 59-2 at ¶ 15]. The Forest Service's issuance of the RUP without following the ESA and NEPA "distresses [her] greatly [because] these activities are being allowed on National Forest lands and in candy darter habitat specifically." [*Id.* at ¶ 18]. Further, she laments that such failures mean "there are no measures in place to

5

protect the candy darter from" the activities authorized by the RUP, such as "mining and hauling coal and supplies" which she fears will "continue to cause runoff that will enter the North Fork and South Fork Cherry Rivers." [*Id.* at ¶ 20]. Mr. Young, who "has visited the area impacted by the RUP on numerous occasions to photograph the streams and forests," and has specific plans to visit again, [ECF 60 at 19, citing Young Decl. (ECF 59-8 at ¶¶ 6, 12–21, 26, 28, 29, 44, 65)], has "witnessed first-hand" the "dust, sediment, and runoff" on FS249, which he views as an "imminent threat to the [D]arter's critical habitat in the South Fork Cherry River and Laurel Creek," [ECF 59-8 at ¶ 28]. Mr. Young is "deeply concerned" that, as he has witnessed "fugitive dust blanket[ing] the vegetation along [FS249 and FS223]," the "tree cutting and the dust and noise from coal hauling and mining is harming . . . the endangered Indiana bat and northern long-eared bat." [*Id.* at ¶ 29]. Mr. Young's review of the numerous violations on the haulroads—issued by both the Forest Service and the West Virginia Department of Environmental Protection—gives him "significant concerns" about "the daily hauling of coal through the Monongahela National Forest," and he finds it "especially disconcerting that these violations are occurring in the spring when the candy darters are spawning in this area." [*Id.* at ¶ 44]. In Mr. Young's view, the Forest Service's issuance of the RUP without following the procedures required by the ESA and NEPA harms his ability to view and enjoy these species in the future, [*id.* at ¶ 71], because he is keenly aware that the "South Fork of the Cherry River and the North Fork Cherry River are among the most important places" for the candy darter, and, thus, he "fear[s]" that "[i]f this stronghold is lost . . . we will lose the candy darter forever." [*Id.* at ¶ 68].

While there are numerous specific allegations in the other declarations which Plaintiffs could have also pointed to in their summary judgment brief to demonstrate standing, *see, e.g.*, Callahan Decl. [ECF 59-3 at ¶¶ 3–7] (describing Mr. Callahan's interests and experiences "fishing and exploring" the North Fork of the Cherry River in the Monongahela National Forest);

Wood Decl. [ECF 59-6 at ¶¶ 4–9] (describing Mr. Wood's interests and experiences surveying for bats and attempting to view the candy darter in the North Fork Cherry River), doing so is unnecessary because not all plaintiffs must demonstrate standing, as long as at least one has satisfied Article III. *See Mass. v. EPA*, 549 U.S. 497, 518 (2007); *see also Rumsfeld v. F. for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

Plaintiffs direct the Court to the declarations specifically to show how the Forest Service's issuance of the RUP without complying with the ESA and NEPA harms Plaintiffs' members' recreational, professional, aesthetic, and scientific interests by harming the public lands and habitat of the listed species and/or causing direct or indirect harm to the species. *See Piney Run Pres. Ass'n*, 268 F.3d at 263 ("[A] plaintiff need only show that he used the affected area, and that he is an individual for whom the aesthetic and recreational values of the area are lessened by the defendants activity." (internal citation omitted)); *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972); *see also See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) (holding that plaintiffs had established an injury in fact because the challenged activity directly affected their "recreational, aesthetic, and economic interests"); *Lujan*, 504 U.S. at 562–63 ("[T]he desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for the purpose of standing.").

South Fork's reliance on *American Muscle Docks* is inapposite. [ECF 79 at 7] (citing *Am. Muscle Docks & Fabrication, LLC v. Merco, Inc.*, 187 F. Supp. 3d 694, 701, 703 (N.D. W.Va. 2016)). In that case the plaintiff filed claims under the Lanham Act and other claims alleging the defendant misrepresented the quality of its products, engaged in unfair competition, defamed the plaintiff, and interfered with its business by spreading false rumors and submitting misleading bids. *Am. Muscle Docks*, 187 F. Supp. 3d 697–98. Accordingly, the plaintiff sought damages and

other remedies and filed for partial summary judgment in advance of trial. *Id.* Unlike this case, *American Muscle Docks* did not involve a challenge to an agency action reviewed under the APA's standard of review, and the affidavits at issue did not address the threshold jurisdictional issues of the plaintiff's standing to sue under Article III but, rather, addressed material facts discrediting the merits of plaintiff's false advertising claims under the Lanham Act. *Id.* 700–01.

Unlike the merits questions at issue in that case, courts routinely consider extra-record evidence submitted for standing purposes, even in cases otherwise governed by the APA's record rule. *See Sierra Club*, 899 F.3d at 284–85 (considering affidavits submitted by plaintiffs in an APA case to determine whether plaintiffs have standing); *see also Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527 (9th Cir. 1997) (considering petitioners' affidavits in APA case to determine whether petitioners have standing). Thus, to evaluate Plaintiffs' standing in this case, it is entirely proper for the Court to consider extra-record evidence in Plaintiffs' declarations submitted for this purpose.

> 2. **Plaintiffs Properly Presented Evidence in Declarations to Support Standing.**

Contrary to South Fork's assertions, [ECF 79 at 9], Plaintiffs properly presented evidence in their declarations for the purpose of establishing Article III standing in this action. Plaintiffs' declarations provide detailed firsthand accounts of the concrete injuries that Plaintiffs' members have suffered—and will continue to suffer—as a result of the Forest Service's issuance of the RUP to South Fork without complying with the ESA and NEPA.[2] Plaintiffs' declarations describe

---

[2] While, unfortunately, "none of the affiants has ever seen a candy darter," as South Fork points out, [ECF 79 at 9], this is not required for Article III standing. Indeed, a plaintiff need not *see* an endangered species to establish standing to sue under the ESA. *See generally Lujan v*, 504 U.S. 555. While the Supreme Court in *Lujan* ultimately found no standing due to a lack of imminence and specificity of the injuries, the opinion—and particularly Justice Kennedy's concurrence, *id.* at 579, and Justice Stevens' concurrence, *id.* at 582—acknowledges that direct observation of an endangered species is not required. Rather, it is sufficient if the plaintiff uses the affected area and has a concrete interest in the species' well-being, *id.* at 562–64. The Supreme Court further

specific, personal harms to Plaintiffs' members, including interference with their use and enjoyment of the specific public lands at issue in this case and the diminished opportunity to observe, appreciate, and study at-risk species and their habitats. *See, e.g.*, Young Decl. [ECF 59-8 at ¶¶ 28–29, 44, 62–65, 68–70]; Kotcon Decl. [ECF 59-5 at ¶¶ 16–23]; Curry Decl. [ECF 59-2 at ¶¶ 15–16]. For example, declarants Andrew Young, James Kotcon, and Tierra Curry all discuss their use and enjoyment of these parts of the Monongahela National Forest. Young Decl. [ECF 59-8 at ¶¶ 11–15, 17–19]; Kotcon Decl. [ECF 59-5 at ¶¶ 16–23]; Curry Decl. [ECF 59-2 at ¶¶ 15–16]. Such harms constitute classic environmental and aesthetic injuries that satisfy the "injury in fact" requirement of Article III standing. *See Laidlaw*, 528 U.S. at 181–83 (discussing the injuries supporting plaintiffs' standing).

South Fork asserts but does not actually explain why Plaintiffs' declarations represent expert testimony or hearsay. [ECF 79 at 9–10]. Such conclusory arguments are not properly raised. *See Grayson O. Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by . . . failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)).

None of Plaintiffs' declarations is hearsay or offered as expert testimony. Each of Plaintiffs' declarations is direct testimony based on the Plaintiffs' members' personal knowledge. *See* [ECF 59-2 at ¶ 1], [ECF 59-3 at ¶ 1], [ECF 59-4 at ¶ 1], [ECF 59-5 at ¶ 1], [ECF 59-6 at ¶ 1], [ECF 59-7 at ¶ 1], [ECF 59-8 at ¶ 1]. Indeed, Mr. Young has "witnessed first-hand the imminent

---

confirmed in *Laidlaw* that aesthetic and recreational interests in a species or habitat—even without direct contact with the species—can support standing. 528 U.S. at 183–84 (explaining that "[e]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity" (*quoting Sierra Club v. Morton*, 405 U.S. at 735)); *see also Lujan*, 504 U.S. at 562–63 ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing.").

9

threat to the candy darter's critical habitat in the South Fork Cherry River and Laurel Creek caused by . . . the use of Forest Roads 223 and 249 to haul coal," [ECF 59-8 at ¶ 28], and he has seen "[b]oth on the ground and through aerial surveys, . . . the dust, sediment, and runoff caused by coal hauling along these Forest Service Roads." [*Id.*] Thus, under Fed. R. Evid. 602, evidence contained within Plaintiffs' declarations that is based on the declarants' personal knowledge is admissible and not hearsay. Even if it were (it is not), declarations submitted in summary judgment proceedings are excepted from the hearsay rule. *See* Fed. R. Evid. 802 and Advisory Comm. Notes; *see also* Fed. R. Civ. P. 56(c).

South Fork's reliance on *Meiri v. Dacon*, 759 F.2d 989, 998 (2nd Cir. 1985), is misplaced. [ECF 79 at 9]. In *Meiri*, the Second Circuit reviewed the district court's denial of summary judgment in a *prima facie* employment discrimination suit brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in which the plaintiff alleged she was fired because of her religion. *Id.* at 992. The court reviewed Ms. Meiri's affidavits to reach the merits of her claims—and specifically, whether the stated reasons for her termination were merely a pretext for discrimination—and determined that her conclusory allegations of discrimination were insufficient to overturn the district court's proper granting of summary judgment for her employer. *Id.* at 997–98. Unlike the affidavit in *Meiri*, Plaintiffs' declarations provide firsthand accounts of members' injuries caused by the Forest Service's issuance of the RUP to address their Article III standing. Therefore, South Fork's reliance on *Meiri* is unavailing here.

South Fork wrongly claims that it is "obvious that Plaintiffs submitted [the declarations] in order to support their position on the merits." [ECF 79 at 8]. Not so. As explained, Plaintiffs submitted the declarations for the purpose of establishing Article III standing. *See Doriety v. Sletten*, 109 F.4th at 674 (explaining that "when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist." (cleaned

up)). Thus, it is entirely within the Court's proper authority to consider Plaintiffs' declarations for the purpose of determining its jurisdiction in this case.

Accordingly, because Plaintiffs have properly presented evidence in Plaintiffs' members' sworn declarations of the injuries that support Plaintiffs' standing in this case, South Fork's motion to exclude the declarations must be denied.

## II. The Court May Otherwise Consider Plaintiffs' Declarations.

Beyond its evaluation of Plaintiffs' standing, the Court may also consider Plaintiffs' declarations and their attachments in reaching the merits of this case due to numerous exceptions to the APA's record rule.[3] In particular, the Court may properly consider the declarations and attachments for the allowable purposes of evaluating whether to vacate the RUP on the basis that the Forest Service's issuance of the RUP is "arbitrary and capricious," including whether there are relevant factors the Forest Service failed to consider, *see Piedmont Envtl. Council v. U.S. DOT*, 159 F. Supp. 2d 260, 270 (W.D. Va. 2001) (explaining the record-rule exceptions are "particularly important when reviewing a decision under NEPA where a court must determine whether the agency considered all relevant factors" (citing *Krichbaum v. U.S. Forest Serv.*, 973 F. Supp. 585, 589 (W.D. Va. 1997), *aff'd*, 139 F.3d 890 (4th Cir. 1998))).

---

[3] Questions about remedy—in particular, whether to vacate the agency action following a decision on the merits or issue equitable relief—are also not subject to the APA's record rule because such questions turn on facts and evidence of harms from outside the record. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24–25 (2008) (relying on extra-record declarations from agency to vacate injunction); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 797 (9th Cir. 2005) (affirming district court's remedy order and reliance on extra-record affidavits from experts). This makes sense because requests for certain types of relief are controlled by principles of equity. *Sierra Pac. Indus. v. Lyng*, 866 F.2d 1099, 1111 (9th Cir. 1989). When evaluating requests for equitable relief, the district court weighs "the competing claims of injury . . . and the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). Extra-record declarations submitted for relief purposes therefore also do not (and cannot) fall within the ambit of the APA's record rule.

### 1. Although the APA's Standard of Review Applies, the APA's "Record Rule" Does Not Limit the Scope of the Court's Review.

Plaintiffs' challenge to the Forest Service's issuance of the RUP is reviewed under the APA's standard of review, which directs courts to "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the "arbitrary-and-capricious" standard, an agency action is unlawful if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency."[4] *Sierra Club*, 899 F.3d at 293.

As a general rule, the scope of a court's review of an agency action challenged under the APA is based on the administrative record that was before the agency at the time of the decision. 5 U.S.C. § 706; *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). This "record rule" seeks both to prevent a court from "substitut[ing] its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and to help courts carry out their important role in "ensuring that agencies have engaged in reasoned decisionmaking," *Judulang v. Holder*, 565 U.S. 42, 53 (2011).

Consistent with these purposes, however, the record rule does not strictly limit *all* judicial review in cases applying the APA standard of review to the record submitted by an agency. As relevant here, for example, the record rule does not apply to Plaintiffs' NEPA claim, [ECF 1 at ¶¶ 157–163], which seeks to "compel agency action unlawfully withheld or unreasonably delayed" under the APA, 5 U.S.C. § 706(1), because "when a court considers a claim that an agency has *failed* to act," there is "no final agency action that closes the administrative record or

---

[4] Even though the court does not employ the standard of review set forth in Fed. R. Civ. P. 56, summary judgment is an appropriate procedure to resolve a challenge to a federal agency action. *See, e.g., Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

12

explains the agency's [in]action[]." *S.F. Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002).

Notably, while Plaintiffs claims brought under the ESA citizen-suit provision, [ECF 1 at ¶¶ 143–156], are subject to the APA's "arbitrary-and-capricious" standard of review, the APA's scope of review—the record rule—does not strictly apply. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481, 497 (9th Cir. 2011) (holding that a court "may consider evidence outside the administrative record for the limited purposes of reviewing [an] ESA claim"); *see also, e.g.*, *Ctr. for Biological Diversity v. Ross*, 349 F. Supp. 3d 38, 44 (D.D.C. 2018), and *Conservation Cong. v. Finley*, No. C 11-04752 SC (LB), 2012 WL 1564946, at *5 (N.D. Cal. May 2, 2012) (permitting discovery on ESA citizen-suit claims).

Plaintiffs' claims pursuant to the ESA's citizen suit provision, 16 U.S.C. § 1540(g), center around the Forest Service's issuance of the RUP without consulting under section 7 of the ESA. *See* [ECF 1 at ¶¶ 143–156]. Section 7 of the ESA requires the Forest Service to consult on *any* action that "*may* affect" listed species or critical habitat, 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a) (emphasis added)—even actions that are beneficial, benign, or insignificant. *See Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7, 13 (D.D.C. 2014) (explaining that an agency must consult about "[a]ny possible effect, whether beneficial, benign, adverse, or of an undetermined character."); *see also* ESA Handbook at xv–xvi (clarifying that this standard is met even by "discountable effects," meaning "those extremely unlikely to occur," and "insignificant effects," meaning those incapable of being "meaningfully measure[d], detect[ed], or evaluate[d].").[6] This extremely "low" threshold, *see Ctr. for Biological Diversity v. U.S. Mar. Admin.*, No. 4:21-cv-00132, 2023 WL 2746028, at *14 (E.D. Va. Mar. 31, 2023), requires Plaintiffs to show in this case that the Forest Service's issuance of the RUP "may affect" listed species in proving that the Forest Service's issuance of the RUP was arbitrary and capricious.

13

It bears noting that because the Forest Service neither engaged in consultation with FWS pursuant to section 7 of the ESA nor conducted any analysis under NEPA, there is effectively no administrative record. Had the Forest Service complied with its obligations under section 7 of the ESA and adhered to NEPA's procedural requirements, it would have generated a more comprehensive analysis reflected in an administrative record suitable for judicial review.

Nevertheless, in their summary judgment brief, Plaintiffs cite to ample evidence contained within the administrative record to prove that the Forest Service's issuance of the RUP "may affect" listed species.[5] [ECF 60 at 16–18]. By contrast, the Forest Service has never presented contrary evidence suggesting that it did consult prior to issuing the RUP.

Accordingly, the administrative record in this case is sufficient for the Court to find that the Forest Service's issuance of the RUP is unlawful. If, however, the judge finds that any of the evidence in Plaintiffs' declarations is inadmissible, the appropriate thing to do is not to exclude the declarations entirely since they are necessary to establish Plaintiffs' standing, but, rather, to limit consideration of the merits to the administrative record. *Cf. Pesticide Action Network N. Am. v. Souza*, No. 24-cv-06324, 2025 WL 1918740, at *7 (N.D. Cal. July 11, 2025) (allowing for the court's consideration of extra-record evidence in plaintiffs' declaration and map attachment for the limited purpose of reviewing plaintiffs' standing).

### 2. Multiple Exceptions to the APA's Record Rule Permit the Court to Consider Extra-Record Evidence In Plaintiffs' Declarations.

While the Court's review of Plaintiffs' claims is not confined to the administrative record, even if it were, there are multiple exceptions to the APA's record rule that permit the Court to consider information in Plaintiffs' declarations as extra-record evidence in this case. *See*

---

[5] The Forest Service's failure to consult pursuant to the ESA and follow NEPA also constitutes agency action unlawfully withheld or unreasonably delayed, in violation of APA section 706(1), to which the record rule also does not apply.

14

*Piedmont Envtl. Council*, 159 F. Supp. 2d at 270. As relevant here, the Court may consider Plaintiffs' extra-record materials as necessary: (1) to determine whether the Forest Service relied on materials not in the record; (2) to illustrate factors that the Forest Service failed to consider; and (3) to provide background information to clarify complex or technical issues. *See id.* Indeed, these exceptions are "particularly important when reviewing a decision under NEPA where a court must determine whether the agency considered all relevant factors." *Id.* (citing *Krichbaum*, 973 F. Supp. at 589).

The crux of Plaintiffs' Motion for Summary Judgement in this case is that the Forest Service violated the law by failing to consult on issuance of the RUP and despite ample evidence that the RUP "may affect" listed species. As explained above, because Plaintiffs' allegations turn on the agency's failure to review relevant factors, extra-record evidence is admissible. *See id.* Moreover, much of the information in Plaintiffs' declarations illuminates necessary background information to clarify the issues in this case. *See id.* Thus, it is within the Court's discretion to consider materials within Plaintiffs' declarations to inform its review of the challenged action: the Forest Service's issuance of the RUP. *See id.* The Court should, therefore, deny South Fork's motion to exclude Plaintiffs' declarations.

### III. The Court Should Deny South Fork's Alternative Request for Discovery.

South Fork alternatively seeks to conduct discovery, including taking depositions of Plaintiffs' members, to further probe the issue of standing. [ECF 79 at 11].

As a preliminary issue, South Fork's 11th-hour motion for discovery on Plaintiffs' standing should be dismissed outright because counsel for South Fork did not confer with Plaintiffs regarding the motion. W. Va. R. Civ. P. 37.1(b) (requiring that "[b]efore filing any discovery motion . . . counsel for each party shall make a good faith effort to confer . . . .").

Moreover, because South Fork has not provided any evidence to discredit Plaintiffs' declarations, it has not supplied any basis to conduct discovery or take depositions. *See Piney Run Pres. Ass'n v. Cnty. Comm'rs*, 50 F. Supp. 2d 443, 446 (D. Md. 1999) (denying defendant's discovery request because defendant failed to explain how further discovery would lead to any contrary evidence). Courts have often relied upon similar declarations to establish standing in citizen suits. *See, e.g.*, *Sierra Club v. Simkins Indus., Inc.*, 847 F.2d 1109, 1112 (4th Cir. 1988); *Chesapeake Bay Found. v. Bethlehem Steel Corp.*, 608 F. Supp. 440, 445 (D. Md. 1985); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 556–57 (5th Cir. 1996); *Save Our Cmty. v. EPA*, 971 F.2d 1155, 1160–61 (5th Cir. 1992).

South Fork attempts to cast Plaintiffs' standing declarations as being "speculative" simply because "none of the affiants has ever seen a candy darter in the area." [ECF 79 at 10]. But, again, that is not required. *See supra* FN2; *Lujan*, 504 U.S. at 562-563; *Laidlaw*, 528 U.S. at 183; *Sierra Club*, 405 U.S. at 727. Indeed, such a requirement would be nearly impossible—candy darters are extremely rare endangered species, pushed to the brink of extinction from coal mining, sedimentation, and other threats throughout their range. [*See* ECF 60 at 9–10]. The Cherry River watershed is one of the last strongholds of the species, though portions of this area have continued to be degraded by the very threats that extirpated the candy darter from other extensive portions of their range. [*See id.* at 8–10].

Plaintiffs' declarations describe Plaintiffs' members' injuries resulting from the Forest Service's issuance of the RUP without following the procedures required by the ESA and NEPA—procedures necessary to avoid harm to the endangered species and their habitats in the areas of the Monongahela National Forest affected by the activities authorized under the RUP.

There is no indication that South Fork seeks to depose Plaintiffs' members for any reason other than delaying this Court's decision. Indeed, Federal Defendants have not challenged

16

Plaintiffs' standing in this case. South Fork claims that it would have been "illogical and premature" to seek discovery while its motion to dismiss remained pending. [ECF 79 at 12.] But that is the normal course under the federal rules of civil procedure, which do not suspend discovery upon the filing of a dispositive motion. *See* Order Denying Mot. to Stay Discovery, ECF 52, *McEvoy et al v. Diversified Energy Co. PLC*, 5:22-cv-00171-JPB (N.D. W. Va. Sep. 30, 2022) ("Defendants seek to stay discovery until the Motion to Dismiss is resolved because, if granted, the matter will be disposed of in its entirety . . . . [T]his Court does not know whether or not it will grant or deny the pending Motion to Dismiss. Thus, this Court sees no reason to put a halt on discovery."). The Court's Scheduling Order clearly established South Fork's deadline to respond to Plaintiffs' motion for summary judgment. [ECF 78]. South Fork has not provided any meaningful justification for its failure to seek discovery in accordance with that schedule. The company's effort to further delay its response deadline, which has already been pushed back numerous times, is impermissible.

Regardless of South Fork's tardiness, because Plaintiffs' members' sworn declarations are sufficient to prove their standing in this case, there is no basis for discovery. *See Chesapeake Bay Found. v. Am. Recovery Co.*, 769 F.2d 207, 209 n.* (4th Cir. 1985) (explaining that, if allegations of standing were challenged, "the district court could have required an affidavit to the same effect or disclosure of the names of a representative number of members," but rejecting "any implication in defendant's argument on standing that individual citizen members of organizational representatives must subject themselves to detailed interrogatories on their use of the affected waters . . . ."). Accordingly, and respecting the interests of judicial efficiency and moving this matter toward completion, South Fork's alternative motion for discovery on Plaintiffs' standing must be denied.

17

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny South Fork's motion to exclude Plaintiffs' declarations and deny South Fork's alternative motion to allow discovery on standing.

DATED: July 30, 2025

                                              Respectfully submitted,

                                              */s/ Margaret E. Townsend*
                                              Margaret E. Townsend
                                              Visiting Attorney
                                              Center for Biological Diversity
                                              P.O. Box 11374
                                              Portland, OR 97211-0374
                                              (971) 717-6409
                                              mtownsend@biologicaldiversity.org

                                              Ryan Adair Shannon
                                              Visiting Attorney
                                              Center for Biological Diversity
                                              P.O. Box 11374
                                              Portland, OR 97211-0374
                                              (971) 717-6407
                                              rshannon@biologicaldiversity.org

                                              Lindsay E. Reeves
                                              Visiting Attorney
                                              Center for Biological Diversity
                                              3436 Magazine Street, FRNT PMB 539
                                              New Orleans, LA 70115
                                              (504) 342-4337
                                              lreeves@biologicaldiversity.org

                                              */s/ Benjamin A Luckett*
                                              Benjamin A Luckett (WVSB No. 11463)
                                              Amanda Demmerle (WVSB No. 13930)
                                              APPALACHIAN MOUNTAIN ADVOCATES
                                              P.O. Box 507
                                              Lewisburg, WV 24901
                                              (304) 873-6080
                                              bluckett@appalmad.org
                                              (757) 650-2774
                                              ademmerle@appalmad.org

*Counsel for Plaintiffs Center for Biological Diversity, Appalachian Voices, Greenbrier River Watershed Association, Kanawha Forest Coalition, Sierra Club, and West Virginia Highlands Conservancy*

19